## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 17-215 (DWF/BRT) |
| Plaintiff, | |
| v. | |
| Steven B. Markusen and<br>Jay C. Cope, | **REPORT AND<br>RECOMMENDATION** |
| Defendants. | |

John E. Kokkinen, Esq., Assistant United States Attorney, counsel for Plaintiff.

William J. Mauzy, Esq., Mauzy Law PA, counsel for Defendant Steven B. Markusen.

Andrew S. Birrell, Gaskins, Bennett & Birrell, LLP, counsel for Defendant Jay C. Cope.

Defendant Jay C. Cope moves the Court for an order severing his case for trial from that of his co-Defendant, Steven B. Markusen. (Doc. No. 44.) The Court held a hearing on this motion on July 11, 2018. (Doc. No. 69.) For the reasons stated below, this Court recommends that Cope's Motion for Severance be denied.

### I.     Summary of Allegations in the Indictment

Defendants are charged with eight counts of wire fraud. (Doc. No. 1, Indictment.) On August 23, 2017, a grand jury returned an Indictment alleging a scheme whereby Markusen and Cope defrauded investors in two private hedge funds, the Archer Equity Fund and Archer Focus Fund (collectively, the "Funds"), in several ways.

First, Markusen, the owner, CEO, and managing member of Archer Advisors, LLC ("Archer"), allegedly requested and obtained reimbursements from the Funds by falsely representing that Archer had paid fees to Cope for research that Cope had supposedly conducted on the Funds' behalf. (Indictment ¶ 7.) In reality, the fees were not paid by Archer. Instead, Markusen and Cope had caused Cope to be paid through "soft dollars," commissions or kickbacks provided by brokerage firms to encourage the use of their firms to execute trades. (*Id.* ¶ 8.) Between May 2009 and October 2013, Archer used over $500,000 from "soft dollar" accounts to pay research expenses, over 80% of which went to Cope. (*Id.*)

Second, the Indictment alleges that Markusen and Cope engaged in trading activity that was specifically designed to ensure that the "soft dollar" accounts contained sufficient credits to cover Cope's monthly invoices. (Indictment ¶ 9.) At times, Markusen and Cope increased their trading activity to generate enough "soft dollars" to pay Cope. (*Id.*) This activity included "day trading," *i.e.*, buying and then selling a position on the same trading day. (*Id.*) Day trading was inconsistent with Archer's prior trading behavior and the stated investment strategies of the Funds. (*Id.*)

Third, Markusen and Cope are alleged to have artificially inflated the value of the funds through a market manipulation scheme known as "marking the close." (Indictment ¶ 10.) On at least twenty-eight occasions, Archer placed limit orders for large volumes of shares of CyberOptics Corp. ("CYBE") in the closing minutes on the final day of a month, often at or above prevailing market prices. (*Id.*) Markusen and Cope thus were able to cause CYBE stock to close at artificially high prices at the end of numerous

months. (*Id.*) Because the Funds were heavily invested in CYBE, this artificial increase in the price of the stock resulted in an increase in the overall value of the Funds, which caused them to appear to be performing better than they were actually performing. (*Id.*)

Fourth, the Indictment alleges that Markusen fraudulently sought reimbursements from the Funds for other expenses that Archer did not actually pay. (Indictment ¶ 11.) Specifically, as with Cope's research fees, Markusen requested reimbursement from the Funds for expenses purportedly paid by Archer to two entities when, in reality, Archer had not actually paid those expenses. (*Id.*)

## II.     Analysis

Rule 8(b) of the Federal Rules of Criminal Procedure provides that an indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Joinder of defendants under Rule 8(b) "requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense." *United States v. Bledsoe*, 674 F.2d 647, 656 (8th Cir. 1982). "In order to be part of the 'same series of acts or transactions,' acts must be part of one overall scheme about which all joined defendants knew and in which they all participated." *Id.* The "prerequisites for joinder are liberally construed in favor of joinder." *United States v. Morris*, 723 F.3d 934, 941 (8th Cir. 2013).

As set forth above, the Indictment alleges a single, cooperative scheme to defraud the Funds in several ways, including fraudulently generating soft dollars to pay Cope, "marking the close" to artificially inflate the value of the Funds, and seeking reimbursement for expenses that were not actually paid. Therefore, joinder is proper under Rule 8(b). *See Morris*, 723 F.3d at 941 ("Although there was not overlap on every charge, a complete overlap is not necessary for joinder to be proper.").

Cope argues that he would be prejudiced by joinder. *See* Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). Severance may be granted "upon defendant's showing of real prejudice." *United States v. Frank*, 354 F.3d 910, 920 (8th Cir. 2004). "Where multiple defendants are charged in the same indictment, there is a preference for a joint trial unless the party moving to sever can show that the benefits are outweighed by a clear likelihood of prejudice." *United States v. Boone*, 437 F.3d 829, 837 (8th Cir. 2006). A likelihood of prejudice "may be demonstrated by showing either that the jury cannot be expected to compartmentalize the evidence with respect to different defendants due to a 'prejudicial spillover effect' between the cases against them, or that one defendant's defense conflicts with that of another and that the jury is likely to infer from this conflict alone that both are guilty." *Id.* (internal citation omitted).

Cope argues that "many of these concerns are present." (Doc. No. 45, Cope's Mem. in Supp. of Severance 2.) According to Cope, the defenses presented at trial are

4

likely to be irreconcilable, and the jury likely will not be able to compartmentalize the evidence against Cope and Markusen. (*Id.* at 2–3.) These generalized concerns are not enough to justify severance because to obtain severance, a defendant must make a "specific showing that a jury could not reasonably be expected to compartmentalize the evidence." *United States v. Hively*, 437 F.3d 752, 765 (8th Cir. 2006). And Cope does not explain how the defenses to be presented at trial would be irreconcilable. Any potential prejudice can be cured by the use of limiting instructions to the jury. *See United States v. Frank*, 354 F.3d 910, 920 (8th Cir. 2004). Therefore, Cope is not entitled to severance.[1]

## RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Cope's Motion for Severance (Doc. No. 44) be **DENIED**.

Date: July 18, 2018.

*s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge

---

[1] Cope also asks the Court to enter an order requiring the Government to provide for *in camera* inspection any statements by Markusen that the Government intends to use as evidence at trial. (Doc. No. 44.) The Government responds that it does not anticipate using any such statements. To the extent that any such statements exist, concerns over those statements can be addressed before Judge Donovan W. Frank if this case goes to trial.

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen (14) days**. A party may respond to those objections within **fourteen (14) days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.